

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable T. M. Trimble
First Assistant
State Supt. of Public Instruction
Austin, Texas

Dear Sir:

Opinion No. 0-7048
Re: Sale of school building of
elementary school district
by trustees of rural high
school.

We have received your letter of July 5, 1946, in which you request the opinion of this department upon the above captioned matter. Your letter of request was accompanied by a letter signed by the President of the Board of Trustees and also the Superintendent of the San Marcos Independent School District and a letter signed by the County Superintendent of Hays County, which letters were very helpful to this department.

In March of 1945 the County Board of School Trustees of Hays County formed a rural high school district by annexing three common school districts to the San Marcos Independent School District. The questions upon which our opinion is requested relate to the sale of the land and buildings of these three districts by the board of trustees of the rural high school district. The facts concerning these common school districts are briefly summarized as follows:

1. School district A has maintained no school since 1940. Prior to the formation of the rural high school district, all scholastics residing in A attended the San Marcos Independent School District by contract. Since the formation, all scholastics, including those in the elementary grades, have attended schools located in the City of San Marcos. A frame school building and a teacherage owned by A are not used and are rapidly deteriorating.

2. School District B until 1945 maintained for

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Anglo-American students elementary school through the 7th grade in its school building. However, for eight years its high school students have attended the high school of San Marcos Independent School District. Prior to the formation of the rural high school district, tuition for such students was paid from local funds of school district B. After the formation of the rural high school district and before the commencement of the 1945-46 school year, it was determined that the Anglo-American elementary students should be transported to and taught in the elementary school located within the City of San Marcos. Accordingly, this was done, and no school' for such students was maintained in school district B. A Spanish-American elementary school has been maintained in the district prior to and since the formation of the rural high school district. During the school year just concluded the average daily attendance of such Spanish-American students was 9. This school was the only school maintained within the district during 1945-46.

3. School district C has maintained no school for Anglo-American students for more than eight years. All such scholastics, both in elementary and in high school grades, have attended city schools, and tuition was paid until the formation of the rural high school district. An elementary school for Spanish-American scholastics has been maintained both prior to and after formation of the rural high school district. In 1945-46 the total enrollment of this school was 41; however, the average daily attendance was only 18.2.

In connection with these facts the following questions are asked:

"Under the facts above-stated can the trustees

223

of San Marcos I. S. D. (1) discontinue each and all
of the schools (or all thereof except the said two
Mexican schools, if it be desirable to continue the
same) in the former common school districts; and (2)
petition the county board of school trustees of Hays
County, Texas, to consolidate each of said former
school districts with San Marcos I. S. D. for ele-
mentary school purposes? Should the county board
see fit to make the order effecting such consolida-
tion, then would the trustees of San Marcos I. S. D.
be in position to sell and convey and pass good ti-
tle to said property, situated in the said former
common school districts? . . .

You ask further, if the county board does not see fit to
pass the consolidation order, what recourse the San Marcos board of
trustees would have, and also, if the San Marcos board of trustees
cannot pass title as outlined in the above quoted matter, what pro-
cedure should be followed in the conveyance of said property.

That part of Article 2922f dealing with abolishing and
consolidating elementary school districts and the discontinuance
of schools within elementary school districts reads as follows:

"The county board of school trustees shall not have
the authority to abolish or consolidate any elementary
school district already established except upon the vote
of a majority of the qualified electors residing in such
elementary district; provided that when any school within
an elementary district fails to have an average daily at-
tendance the preceding year of at least twenty pupils it
may be discontinued by the board of trustees of said rural
high school district, and said district may be consolidated
by the county board of school trustees with some other dis-
trict or districts for elementary school purposes; . . ."
(Emphasis supplied)

Upon first glance it would appear that if the average daily
attendance of any school within an elementary district were below
twenty, then that school could be discontinued and the entire dis-
trict could be consolidated with another district or districts for
elementary school purposes. This, however, is obviously not what
the Legislature intended. Assume that in an elementary district
four elementary schools were maintained, three with more than 100

students and one with only 10. Then a literal following of the statute would mean that the district could be consolidated, as outlined, with another district for elementary school purposes. The absurdity of such a conclusion is evident. It is our opinion that the Legislature intended, and the statute should be interpreted to include, all elementary scholastics residing in the district. In other words, if the average daily attendance of all elementary scholastics residing in the district falls below twenty, then the school or schools can be discontinued and the district could be consolidated with another district or districts for elementary school purposes.

Even with this interpretation it would appear that the situation under consideration would fall squarely within the provisions of the proviso providing for the consolidation of a school district whose average daily attendance falls below twenty, for in school district A no elementary pupils attended school within the district, and in school districts B and C the average daily attendance in each of the Spanish-American elementary schools, the only ones maintained, was below twenty.

However, let us examine Article 2922f further, which article provides, in part:

"Whenever one or more common school districts are annexed to a common school district or to an independent district under the provisions of Section 1, such common or independent district shall maintain elementary schools of such classification as the county board may designate in each district so annexed, for the same length of term provided for the schools of the said common school district or independent district. . ."

In interpreting this provision the court in the case of County Board of School Trustees of Limestone County v. Wilson et at (Tex. Civ. App.), 5 S. W. (2d) 805, stated as follows:

". . . When two or more districts are consolidated under the articles above referred to (Articles 2806-2815), each district loses its separate identity, unless it be for certain limited purposes in connection with taxation, and they together thereafter constitute a single district as though they had never had separate existence. In such cases elementary schools may be located by the board of trustees of the consoli-

Honorable T. M. Trimble - page 5

dated district as need therefor may appear. R. S.
art. 2811. On the contrary, when two or more com-
mon school districts are grouped to form a high
school district, as above shown, each of such dis-
tricts retains its identity, and separate elementary
schools must be maintained therein. R. S. art. 2922f . . ."
(Parenthetical insertion and emphasis added)

Therefore, it is seen that under the statute an elemen-
tary school or schools must be maintained in each of the annexed
districts. Of course, it is included in this mandate that a sat-
isfactory school must be maintained and a school or schools ful-
ly adequate for all elementary scholastics residing within the
elementary district, for it would not be presumed that the Legis-
lature intended that an unsatisfactory school or a school for
only a certain class of scholastics could satisfy the statutory
requirement.

We have been advised that the elementary scholastics of
school districts A, B and C who attend the elementary school lo-
cated in the City of San Marcos do so by agreement between the
board of trustees of the rural high school district (San Marcos
Independent School District) and the residents of such elemen-
tary districts. We have been advised that prior to the time
that such pupils started attending the city schools, each dis-
trict had a daily average of more than twenty pupils, and, fur-
ther, that the average daily attendance of pupils from each of
the elementary districts who attend the city schools is in ex-
cess of twenty.

In Weaver et al, v. Board of Trustees of Wilson Inde-
pendent School District (Tex. Civ. App., W. E. Ref.), 184 S. W.
(2d) 864, a singularly similar situation to the one under consid-
eration was before the court. In that case a rural high school
district had been formed by the annexation of Morgan Independent
School District to Wilson Independent School District. We quote
from the opinion of the court:

" . . .

"An elementary school was maintained in the Morgan
school district for one year following the election but
for subsequent years the elementary pupils have attended
the Wilson school, and the Morgan school properties have
not been used for school purposes. State school authorities
have recognized the new district. The two buildings

advertised for sale are teachers' homes located on the
Morgan school grounds. . ."

The court further stated:

"  . . .

"Article 2922f provides, in substance, that the
county board of school trustees shall not have the
authority to abolish any elementary school district
already established except upon the vote of a major-
ity of the qualified electors residing in such dis-
trict, unless the average daily attendance for the
preceding year falls below twenty.  It is shown in
the record that the average daily attendance in the
Morgan elementary school during the last year school
was held there exceeded twenty. There has been no
election in the Morgan district wherein a majority
of the qualified voters favored its abolition. . ."
(Emphasis supplied)

The court held, in effect, that the school districts
forming a rural high school district did not lose their identity
thereby, did not cease to have an independent existence, and, fur-
ther, that the board of trustees of the rural high school dis-
trict had no authority to sell the annexed district's school prop-
erty.  See also Chastain v. Mauldin (Tex. Civ. App.), 32 S. W. (2d)
235.

You are, therefore, advised that the part of Art. 2922f
dealing with the discontinuation of schools whose average daily
attendance was less than twenty pupils and consolidating the dis-
trict with another district or districts by the county board of
school trustees for elementary school purposes is not applicable
to the situation under consideration for the reason that under the
facts as outlined herein each school district (1) had an average
daily attendance of more than twenty before its students started
attending the city school, and (2) the average daily attendance of
pupils residing in each district who attend the district schools
and the city school is in excess of twenty.

You are further advised that it is the opinion of this
department that the board of trustees of the San Marcos Independ-
ent School District has no authority to sell the building and lands
of school districts A, B and C unless and until an election is
held under Article 2922f or Article 2806 whereby such school dis-
tricts are consolidated.  State vs. Cadenhead, 129 S. W. (2d) 743

Honorable T. M. Trimble - page 7

(Tex. Civ. W. E. Ref.); Weaver et al, v. Board of Trustees of Wilson Independent School District; Chastain v. Mauldin, supra; County Board of School Trustees of Limestone County V. Wilson, supra.

This opinion does not pass upon the authority of the board of trustees of a rural high school district to dispose of the property of a former elementary school district whose school is discontinued because of an average daily attendance of less than twenty and which school district has been "consolidated by the county board of school trustees with some other district or districts for elementary school purposes."

Very truly yours

APPROVED:MAY 1946

ATTORNEY GENERAL OF TEXAS

By

George W. Sparks
Assistant

APPROVED

(Acting)ATTORNEY GENERAL OF TEXAS

GWS/JCP



APPROVED
OPINION
COMMITTEE
BY BluB
CHAIRMAN